**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Fresno Division

| | | |
|---|---|---|
| Gary Ronnell Perkins, | ) | No. CV-06-01177-NVW |
| Plaintiff, | ) | **Order** |
| vs. | ) | |
| California Department of Corrections and Rehabilitation, et al., | ) | |
| Defendants. | ) | |

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 37.) The Court will grant the motion.

**I.  Standard**

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have

enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105–06 (9th Cir. 2000).

When the moving party has carried its burden, the nonmoving party must respond with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The nonmoving party "may not rely merely on allegations or denials in its own pleading." *Id.* Allegedly disputed facts must be material—the existence of only "*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, the nonmoving party's properly presented evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to that party. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

**II.  Facts**

Unless otherwise noted, the parties do not dispute the following facts.

**A.  Perkins's Interaction with Dr. McGuinness**

**1.  The September 28, 2005 Exam**

Plaintiff Gary Perkins is a prisoner in the custody of the California Department of Corrections and Rehabilitation (Corrections). The events relevant to this lawsuit took place while Perkins resided at Kern Valley State Prison in Delano, California. On September 28, 2005, Perkins received a medical exam at Kern Valley on account of pain in the left groin area. Defendant William McGuinness was the doctor who examined Perkins. Dr. McGuinness diagnosed a reducible, left inguinal hernia.

Perkins felt no pain from the hernia in August 2005, but in September he had an acute pain a few inches below the belly button when he sneezed until he lay down and the pain

1  subsided. Though Perkins later said the pain persistently registered at a "seven or eight,
2  somewhere up in there," on a scale from one to ten, from then until his eventual surgery
3  (Perkins Dep. 28:8–23, Apr. 28, 2010), his deposition account of what he told
4  Dr. McGuinness on September 28, 2005, does not assert that Perkins told McGuiness about
5  the intensity of his pain. McGuinness recorded on Perkins's medical chart for that visit, "Pain
6  is about the same." (Doc. 37-3 at 19.)

7  Perkins's says that he asked Dr. McGuinness at this exam for pain medication but
8  McGuinness told him "that he didn't want to give me no pain medication to mask the pain,
9  and that—that I should be seeing somebody within the 24-hour." (Perkins Dep. 24:14–17.)
10 Dr. McGuinness's declaration in support of summary judgment states that he chose not to
11 prescribe pain medication because Perkins "did not appear to be in acute distress" and
12 McGuinness did not want to mask the level of pain while medical providers followed
13 Perkins's condition. (Doc. 37-3 at 5.)

14 Following his visit with Perkins, Dr. McGuinness filled out a "Physician Request for
15 Services" form, dated September 28, 2005 (the same day as the exam). On that form,
16 McGuinness described "inguinal pain," and recommended an outpatient surgical
17 consultation. (*Id.* at 20.) The form contains a line asking the physician to specify whether the
18 requested treatment is "emergent," "urgent," or "routine," and McGuinness circled "urgent."
19 (*Id.*) Nonetheless, McGuinness states in his summary judgment declaration that he
20 "determined that a surgical consult within one month would suffice." (*Id.* at 5.)

21              **2.    The October 24, 2005 Paperwork**

22 The parties disagree whether Perkins's September 28 visit was his only visit with
23 Dr. McGuinness. At his deposition, Perkins claimed that he never saw Dr. McGuinness again
24 after September 28. (Perkins Dep. 26:7–16.) Dr. McGuinness, in his declaration, says the
25 same. (Doc. 37-3 at 4.) Now, however, Perkins claims that one of Defendants' summary
26 judgment exhibits evinces a second meeting between Perkins and McGuinness on October
27 24, 2005. (Doc. 39 at 9.) Perkins apparently refers to a medical record—another "Physician
28 Request for Services"—dated October 24, 2005, and containing Dr. McGuinness's

1 handwriting and signature. (Doc. 37-3 at 22.)

2 Defendants note in reply that the October 24 document on its face "is simply a referral
3 form that Dr. McGuinness signed on October 24, 2005, for Perkins to see a specialist."
4 (Doc. 41 at 3.) In this October 24 document, McGuinness wrote "inguinal hernia/pain" in the
5 "Principal Diagnosis" box and repeated the same description in the "Medical Necessity"
6 field. (Doc. 37-3 at 22.) Dr. McGuinness once again recommended an outpatient surgical
7 consultation, but this time he circled "routine" rather than "urgent." (*Id.*)

8 Whether or not Perkins saw Dr. McGuinness on October 24, 2005, Perkins testified
9 at his deposition that he saw a different doctor on that date (Perkins Dep. 27:3–14), and the
10 record contains a medical chart confirming this (Doc. 37-3 at 21). On that chart, a doctor
11 named Roland Rodriguez (not a party to this action) described Perkins as recounting a "one
12 month history of left inguinal pain. . . . He states the patient [*sic*; pain] is mild to moderate
13 and is not associated with any activity nor was it precipitated by any strenuous activity." (*Id.*)
14 Dr. Rodriguez referred Perkins to a urologist. (*Id.*) Rodriguez's chart does not indicate
15 whether Perkins asked for painkillers at that visit.

16 Though Perkins's late-asserted second visit with Dr. McGuinness on October 24,
17 2005, does not, by its terms, establish a triable issue of fact concerning liability of
18 Dr. McGuinness, Perkins's explicit deposition testimony that he saw Dr. McGuinness only
19 on September 28, 2005, precludes Perkins from arguing contradictory evidence after the
20 close of discovery, for the first time in summary judgment briefing, after Dr. McGuinness
21 lost any occasion to develop that new and inconsistent evidence.

22 **B.     Perkins's Interaction with Dr. Syed**

23 **1.     The December 12, 2005 Memorandum**

24 Sometime between October and December 2005, Perkins initiated an internal
25 grievance process at Kern Valley, complaining that he had not received proper treatment for
26 his condition. Perkins's grievance form is not in the record, but the prison responded by
27 memorandum dated December 12, 2005. The memorandum does not mention Perkins's groin
28 pain, but only his "condition." (Doc. 37-3 at 10.) It summarizes Perkins's doctor visits on

- 4 -

September 28 and October 24 and notes that he had been referred to a urologist. (*Id.*) The memorandum concludes by stating that Perkins's "medical needs will continue to be appropriately addressed" and that his "appeal is GRANTED at the First Level." (*Id.*)

Dr. McGuinness's printed name appears in the memorandum's signature block, but the actual signature is that of Defendant Asarulislam Syed, another doctor then employed by Corrections as the "healthcare manager" at Kern Valley. Dr. Syed's declaration in support of summary judgment acknowledges that he signed the December 12 memorandum for Dr. McGuinness and asserts that he (Syed) "confirmed the findings in the first level response before I signed it for Dr. McGuinness" (*id.* at 7–8). It is undisputed, however, that Dr. McGuinness left his employment at Kern Valley "in early December 2005." (*Id.* at 5.)

### 2.     The April 13, 2006 Memorandum

On December 21, 2005, a urologist examined Perkins and recommended surgery to repair the hernia and to remove a possible undescended testicle. Another physician examined Perkins on January 25, 2006, and agreed with that recommendation. (Doc. 37-2 ¶¶ 15–16.)

Around the same time, Perkins took his original grievance to the second internal level of review. The record does not contain any forms that Perkins himself may have filled out in this second-level review process. However, on April 13, 2006, Kern Valley responded by memorandum written and signed by Dr. Syed. The memorandum states that another doctor (not a party to this action) had recently interviewed Perkins and "afforded [him] the opportunity to further explain [his] issue and to provide any supporting evidence or documents." (Doc. 37-3 at 12.) According to Dr. Syed's memorandum, Perkins told that doctor "that while [his] first level appeal was granted [he] ha[d] not received treatment and still suffer[ed] pain daily." (*Id.*) The memorandum then recounted Perkins's medical treatment to that point, and concluded, "Your appeal is PARTIALLY GRANTED at the second level. You have been scheduled for a Urology consult and possible surgery in June 2006." (*Id.*)

### C. Perkins's Director-Level Appeal and Eventual Surgery

Perkins then appealed his grievance to the director's level. As with his previous grievance proceedings, whatever forms Perkins may have filled out in the appeals process have not made it into the record. However, Perkins attached the director's level appeal decision, dated July 3, 2006, to his complaint. (Doc. 12 at 18.) Under the heading "Appellant's Argument," the director's decision states: "It is the appellant's position that he has submitted numerous [Corrections] Form 7362, Health Care Services Request requesting medical care for the pain in his pelvis/groin area. . . . At the Director's Level of Review he states that he has still not been prescribed pain medication." (*Id*. at 18.)

Under the heading "Findings," the director's decision states:

> The appellant was provided medical care as requested and he has been referred for a specialty consult. If the appellant is feeling pain he has advised to contact his primary care physician (PCP) to discuss his concern. However, the PCP will determine if pain medication should be prescribed. The appellant has been examined by licensed health care providers who did not indicate that medication was medically necessary for the appellant.

(*Id*.) The director concluded that "[n]o changes or modifications are required by the institution." (*Id*. at 19.) The director's decision was signed by "N. Grannis, Chief [¶] Inmate Appeals Branch." (*Id*.) Grannis is not a party to this action.

On July 14, 2006, Perkins had surgery to repair his hernia. The surgery succeeded and he has no lingering medical needs related to the hernia. (Perkins Dep. 43:14–23.) Perkins testified at his deposition, however, that until surgery, his pain persistently remained at a seven or eight (on a scale of one to ten), and was especially acute when he sneezed. (*Id*. 28:8–29:7, 35:3–14.)

### D. Ms. Woodford

Defendant Jeanne Woodford was undersecretary of Corrections from July 2005 to July 2006, and acting secretary from February 2006 to April 2006. Perkins claims that, by virtue of his director's level appeals, Woodford did know or should have known about his medical condition and should have ensured prompt treatment. (*Id.* 44:9–17.) In her declaration in support of summary judgment, Woodford states that she "had no involvement in the medical

- 6 -

care of Gary Perkins" and "did not become aware of Perkins until the litigation." (Doc. 37-3 at 15.) Perkins provides no explanation or supporting evidence to dispute this (Doc. 39 at 2).

### III. Legal Analysis

#### A. Eleventh Amendment Immunity for Corrections

Perkins requests monetary compensation for alleged violations of his constitutional rights. The Eleventh Amendment, however, protects Corrections, a state agency, from having to pay money damages for such a claim. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). The Eleventh Amendment does not protect Corrections from injunctive relief, but Perkins has not sought injunctive relief, nor does the record show any evidence of ongoing harm. Accordingly, Perkins asserts no cognizable legal claim against Corrections itself, and Corrections will be dismissed from this action.

#### B. Perkins's Fourteenth Amendment Claim

Although Perkins cannot seek damages from Corrections as an institution, he can seek damages from Corrections employees in their personal capacities. All of the individual defendants were Corrections employees at the relevant time. By way of 42 U.S.C. § 1983, Perkins therefore claims that these employees' failure to treat his condition for ten months violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process.

Perkins makes no distinction between his Eighth and Fourteenth Amendment claims. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of due process, controls the analysis. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Perkins's claims, as alleged, fall under the Eighth Amendment, and will be analyzed as such.

#### C. Perkins's Eighth Amendment Claim

The Eighth Amendment requires government officials to provide prisoners with adequate medical treatment. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). The government violates this standard when three elements are satisfied. First, the prisoner must endure (or have endured) a "serious" medical need. *Doty v. County of Lassen*, 37 F.3d 540,

1  546 (9th Cir. 1994). A medical condition is "serious" if the failure to treat it could result in
2  further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (quoting
3  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992)). Second, prison officials must
4  display deliberate indifference toward that medical need. *Id.* A prison official is deliberately
5  indifferent if (I) the official knows enough about the prisoner's medical condition to infer
6  that it is serious, and (ii) the official in fact infers that a serious medical condition exists but
7  does not take reasonable steps to remedy or alleviate the condition. *Farmer v. Brennan*, 511
8  U.S. 825, 837 (1994). Third, prison officials' failure to act must cause actual harm to the
9  prisoner. *See Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

10  Perkins asserts two theories of Eighth Amendment violation: (1) the delay between
11  diagnosis and surgery, and (2) the failure to prescribe painkillers during that delay. These
12  theories overlap to some degree because one"painkiller" Corrections could have administered
13  was an earlier surgery. But to the extent Perkins claims that he suffered harm from the delay
14  other than pain, the Court rejects that theory. Perkins testified that the surgery successfully
15  repaired his condition and he suffers no ongoing effects. Perkins therefore could not establish
16  the third element of his claim—that the delay itself caused additional harm. *Id.*; *see also*
17  *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) ("mere delay
18  of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

19  Perkins's second theory is that Defendants failed to treat his pain promptly.
20  "[U]nnecessary and wanton infliction of pain" may violate the Eighth Amendment if the pain
21  amounted to a "serious" medical condition. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976);
22  *see also Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (holding that three-month
23  delay for painful dental problems could violate Eighth Amendment). The questions for this
24  Court, then, are as follows: (1) whether Perkins's pain amounted to a "serious" medical
25  condition; (2) whether a jury could reasonably conclude that McGuinness displayed
26  deliberate indifference to Perkins's pain; (3) whether a jury could reasonably conclude that
27  Syed displayed deliberate indifference to Perkins's pain; and (4) whether a jury could
28  reasonably conclude that Woodford displayed deliberate indifference to Perkins's pain. The

- 8 -

Court will address each of these questions in turn.

### 1. Perkins's Pain

The record contains enough evidence for a reasonable jury to conclude that Perkins suffered pain during the ten months he waited for surgery. The record conflicts as to the intensity of his pain—Perkins testified at his deposition that his pain remained at least "seven or eight" the entire time, whereas one doctor reported Perkins as saying that the pain was "mild to moderate"—but that would be an issue of fact for the jury. Whether Perkins suffered continual pain for the entire ten months would likewise be an issue for the jury.

If a jury eventually found that Perkins suffered only mild, intermittent pain, the Court could conceivably hold as a matter of law that this does not amount to a "serious" medical condition. But on this record, a jury could reasonably credit Perkins's testimony and conclude that he suffered persistent, substantial pain for ten months, which qualifies as a "serious" medical condition. *Hunt*, 865 F.2d at 201; *see also McGowan v. Hulick*, 612 F.3d 636, 640–41 (7th Cir. 2010) (delay in treatment causing unnecessary pain may violate Eighth Amendment); *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) (refusal to provide pain medication while delaying treatment may violate Eighth Amendment). Perkins has therefore sustained his burden to avoid summary judgment on this element.

### 2. Dr. McGuinness's Involvement

While Perkins's pain may have been "serious," the record does not support a reasonable inference that Dr. McGuinness acted with deliberate indifference toward Perkins. It appears that Dr. McGuinness knew from the September 28, 2005 consultation that Perkins experienced some amount of pain, but Perkins does not challenge Dr. McGuinness's medical judgment not to mask Perkins's pain. This simple judgment call about appropriate medical care does not evince deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of [medical] opinion does not amount to a deliberate indifference . . . .").

More importantly, the record contains no evidence that Perkins told Dr. McGuinness — at the September 28, 2010 consultation or at any other time — that his pain remained at

- 9 -

least "seven or eight." Nor does Perkins contradict Dr. Rodriguez's report that, on October 24, 2010, Perkins said that the pain then was "mild to moderate." Because no reasonable jury could find on this record that Dr. McGuinness knew about the alleged intensity of Perkins's pain, Dr. McGuinness could not have displayed deliberate indifference toward it. Dr. McGuinness is therefore entitled to summary judgment.

### 3. Dr. Syed's Involvement

Syed never personally interacted with Perkins, but Perkins's condition came to Syed's attention twice over the space of five months: once, in December 2005, when Syed signed for McGuinness in response to Perkins's grievance; and again, in April 2006, when Syed responded to Perkins's appeal of his grievance. Where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). Accordingly, Dr. Syed is entitled to summary judgment.

### 4. Woodford's Involvement

The record contains no evidence that Woodford knew anything about Perkins or his condition until well after the fact. Therefore, no reasonable jury could conclude that Woodford was deliberately indifferent. Nor can Perkins hold her vicariously liable for the actions of Corrections employees. *Hunt*, 865 F.2d at 200. Accordingly, the Court will grant summary judgment in favor of Woodford.

### D. Qualified Immunity

Given the Court's disposition of the foregoing issues, the Court need not address Defendants' arguments regarding qualified immunity.

**IV.    Conclusion**

IT IS ORDERED that Motion for Summary Judgment (Doc. 37) is GRANTED.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of all Defendants and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 30th day of September, 2010.

_____
Neil V. Wake
United States District Judge

- 11 -